IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

PAULSBORO REFINING COMPANY LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil No. 2:17-cv-2662

**CONSENT DECREE**

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE....................................................................................1
II.     APPLICABILITY ........................................................................................................2
III.    DEFINITIONS .............................................................................................................2
IV.     CIVIL PENALTY ........................................................................................................3
V.      COMPLIANCE REQUIREMENTS ............................................................................4
VI.     REPORTING REQUIREMENTS ...............................................................................6
VII.    STIPULATED PENALTIES ........................................................................................8
VIII.   FORCE MAJEURE....................................................................................................10
IX.     DISPUTE RESOLUTION..........................................................................................11
X.      INFORMATION COLLECTION AND RETENTION ..............................................13
XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS....................................14
XII.    COSTS .......................................................................................................................15
XIII.   NOTICES ...................................................................................................................16
XIV.    EFFECTIVE DATE ...................................................................................................17
XV.     RETENTION OF JURISDICTION...........................................................................17
XVI.    MODIFICATION.......................................................................................................18
XVII.   TERMINATION ........................................................................................................18
XVIII.  PUBLIC PARTICIPATION.......................................................................................18
XIX.    SIGNATORIES/SERVICE ........................................................................................19
XX.     INTEGRATION .........................................................................................................19
XXI.    FINAL JUDGMENT..................................................................................................19

Whereas, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant, Paulsboro Refining Company LLC ("Defendant" or "Paulsboro"), violated Section 113 of the Clean Air Act ("Act" or "CAA"), 42 U.S.C. § 7413, the regulations promulgated thereto, and Paulsboro's CAA Title V Operating Permit ID BOP150003 ("Title V Permit") at the petroleum refinery facility ("Facility") that Paulsboro owns and operates in Paulsboro, New Jersey.

Whereas, the Complaint against Defendant alleges that Paulsboro violated the CAA, implementing regulations promulgated under the Act, and its Title V Permit, with respect to Paulsboro's operation of three steam-assisted flares located at the Facility, known as the North Flare, the New South Flare and the Old South Flare. The Complaint alleges that Paulsboro operated these steam-assisted flares with excessive amounts of steam, causing reduced combustion efficiency and corresponding excess emissions of hazardous air pollutants (HAP) and volatile organic compounds (VOC), in violation of its Title V Permit, and of 40 C.F.R. §§ 60.11(d), 63.6(e), and 60.18(d).

Whereas, on December 1, 2015, EPA promulgated revisions to regulations that are applicable to petroleum refineries, including the regulations at 40 C.F.R. Part 63, Subpart CC. These revised regulations promulgated at 40 C.F.R. Part 63, Subpart CC include new requirements for refinery flares, including the three steam-assisted flares owned and operated by Paulsboro. The compliance date for these new flaring requirements is January 30, 2019. The general purpose of this Consent Decree is to require Paulsboro to achieve early compliance by certain existing flares at the Facility with the new Subpart CC flare requirements, to mitigate the excess flare emissions caused by over-steaming, and the payment of a civil penalty to resolve EPA's allegations concerning Paulsboro's past over-steaming violations.

Whereas, Defendant does not admit any liability to the United States, nor any issue of fact or law except as provided in Section I of this Consent Decree, arising out of the occurrences alleged in the Complaint.

Whereas, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, will avoid litigation between the Parties, and is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(c) and 1395(a), because the violations alleged in the

Complaint occurred in, and Defendant conducts business in, this judicial district. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and over Defendant, and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 2, the United States Attorney for the District of New Jersey, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.      DEFINITIONS

7.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Complaint" shall mean the complaint filed by the United States in this action;

"Consent Decree" or "Decree" shall mean this Decree;

"Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendant" shall mean Paulsboro Refining Company LLC;

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

"Effective Date" shall have the definition provided in Section XIV.

"Facility" shall mean Defendant's petroleum refinery, which includes three steam-assisted flares, designated as the North Flare, the New South Flare, and the Old South Flare, located in Paulsboro, New Jersey.

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

"Parties" shall mean the United States and Defendant;

"Section" shall mean a portion of this Decree identified by a roman numeral;

"United States" shall mean the United States of America, acting on behalf of EPA;

## IV.    CIVIL PENALTY

8.     Within 30 Days after the Effective Date, Defendant shall pay the sum of $180,000 as a civil penalty in accordance with the terms of this Section IV.  If any portion of the Civil Penalty is not paid when due, Defendant shall pay interest on the amount past due accruing from the Effective Date through date of payment, at the rate specified in 28 U.S.C. § 1961.

9.     Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of New Jersey after the Effective Date.  The payment instructions provided by the FLU

will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to the following person on behalf of defendant:

> Robert Muche
> Environmental Manager
> Paulsboro Refining Company LLC
> 800 Billingsport Road
> Paulsboro, NJ 08066
> (856) 224-6607
> Robert.Muche@pbfenergy.com

Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII; and (iii) to EPA in accordance with Section XIII. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States of America v. Paulsboro Refining Company LLC and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-10408.

10.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII of this Decree (Stipulated Penalties) in calculating its federal income tax.

## V.     COMPLIANCE REQUIREMENTS

11.     <u>Compliance with flaring requirements</u>. Paulsboro operates three steam-assisted flare systems located at the Facility, known as the North Flare, the New South Flare and the Old South Flare (collectively, the "Existing Flares"). By no later than the applicable compliance date specified in this Paragraph 11, Paulsboro shall comply with each applicable requirement for flare control devices set forth in §§ 63.670 and 63.671 of the "National Emission Standards for Hazardous Air Pollutants From Petroleum Refineries," 40 C.F.R. Part 63, Subpart CC, § 63.640 <u>et seq</u>. (the "Refinery MACT"):

> a. For the New South Flare and the Old South Flare, compliance by no later than July 30, 2018;

4

b. For the North Flare, compliance by no later than January 30, 2019.

Within 14 Days of the compliance dates specified in this Paragraph 11, Paulsboro shall submit to EPA a Certification of Compliance in accordance with Section XIII of this Consent Decree (Notices). Each Certification of Compliance shall reference the applicable requirements set forth in this Paragraph, shall affirm that Paulsboro is in full compliance with such requirements, and shall indicate the specific date(s) on which Paulsboro achieved full compliance. Each Certification of Compliance shall include the certification in Paragraph 17 of this Consent Decree.

Subsequent to the January 30, 2019 effective date of Sections 63.670 and 63.671 of the Refinery MACT, Paulsboro's compliance with the requirements of Sections 63.670 and 63.671 shall be governed by implementation of the regulations rather than pursuant to this Consent Decree, except that Paulsboro's compliance with the following provisions, to the extent applicable, shall remain subject to the requirements of this Consent Decree until termination pursuant to Section XVII: 40 C.F.R. §§ 63.670(e) (combustion zone operating limits), 63.670(i) (flare vent gas, steam assist and air assist flow rate monitoring), 63.670(j) (flare vent gas composition monitoring), 63.670(l) (calculation methods for determining flare vent gas net heating value), and 63.670(m) (calculation methods for determining combustion zone net heating value), interpreted consistent with the provision at 40 C.F.R. § 63.671(a)(4).

12.    Compliance schedule and interim milestones for New South Flare and Old South Flare projects.   Paulsboro shall complete the following interim project milestones for the New South Flare and Old South Flare projects in accordance with the following schedule:

a. By no later than June 30, 2017, Paulsboro shall place the orders for the BTU Analyzers. "BTU Analyzer" refers to a device that measures the gross caloric heating value/content of a gas measured and reported as British Thermal Units (BTU) based on net heating value;

b. By no later than September 30, 2017, Paulsboro shall complete the Project Definition phase of the Project Schedule, including Process Flow Diagrams, Piping and Instrumentation Diagrams, plot plans, and electrical single line diagrams. "Project Schedule" refers to the overall project timeline from inception of conceptual design to startup and shakedown of new or modified process equipment. The Project Schedule is segmented into phases including, but not limited to, initial project concept description, detailed design, funding approval, long lead materials procurement, field execution, and startup/commissioning. "Project Definition Phase" refers to the phase of a project where the project scope is developed and project related technology is selected in sufficient detail to

produce detailed drawings, such as Piping and Instrumentation Diagrams, and which allow for more refined cost estimation appropriate to capital funding approval.  "Process Flow Diagram" refers to a simplified schematic or other visual representation of a process stream intended to illustrate the general operational elements and flow components and flow directions for a specific process.  "Piping and Instrumentation Diagram" refers to a schematic or drawing that identifies the location, type and configuration within the relevant process unit or area of piping, valves, check valves, control valves, heat exchangers and control instrumentation.

c.  By no later than December 31, 2017, Paulsboro shall procure the primary control components for the steam and gas systems;

d.  By no later than May 15, 2018, Paulsboro shall complete the mechanical installation of the BTU measurement control systems; and

e.  By no later than July 30, 2018, Paulsboro shall commence operation of the New South Flare and the Old South Flare in compliance with the applicable Refinery MACT flaring requirements cited in Paragraph 11 of this Consent Decree.

13.     Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.     REPORTING REQUIREMENTS

14.     Semi-Annual Report:

a.       By July 31st and January 31st of each year after the lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII, Defendant shall submit to EPA, by email/pdf, a semi-annual report for the preceding six (6) month period of January 1 through June 30, or July 1 through December 31, respectively.  Beginning with Paulsboro's submission of the first Periodic Report under 40 C.F.R. §§ 63.655(e)(2) and (g)(11) of the Refinery MACT, Defendant may satisfy the semi-annual reporting requirements in this Paragraph by incorporating into such Periodic Reports any additional

information required under this Paragraph.

   b.  Each semi-annual report shall include the status of any construction or compliance measures; completion of milestones; problems encountered or anticipated, together with implemented or proposed solutions; status of permit applications; operation and maintenance; and reports to state agencies. The semi-annual report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

   c.  If Defendant violates, or determines that it will violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten (10) working Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

  15.  Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

  16.  All reports shall be submitted to the persons designated in Section XIII (Notices).

  17.  Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

  I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information

submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

18.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

19.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

20.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

21.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

22.     <u>Late Payment of Civil Penalty</u>.  If Defendant fails to pay the civil penalty, plus interest, required to be paid under Section IV (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that the payment is late.

23.     <u>Compliance with Refinery MACT flare requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of a requirement of Paragraph 11 of this Consent Decree.  For the purpose of calculating stipulated penalties under this Paragraph 23, after the compliance date(s) specified in Paragraph 11 of this Consent Decree, each subsequent Day of violation of the requirement to achieve compliance with any Refinery MACT requirement in Paragraph 11 shall be aggregated on a per flare basis:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,500………………………… | 1st through 14th Day |

$2,750 .............................................. 15th through 30th Day
$4,250 ..............................................31st Day and beyond

24.   <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree or the requirement in Paragraph 11 to submit a Certification of Compliance:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

25.   Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

26.   Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

27.   The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

28.   Stipulated penalties shall continue to accrue as provided in Paragraph 25, during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.   If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.   If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

9

29.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

30.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

31.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

32.     Non-Exclusivity of Remedy.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## VIII.   FORCE MAJEURE

33.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

34.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven (7) days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the

10

delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

35.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

36.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

37.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 33 and 34 of this Consent Decree.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

IX.     DISPUTE RESOLUTION

38.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute

11

under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

39.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

40.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

41.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

42.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

43.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

44.     Standard of Review

    a.     <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute pertaining to the adequacy of the compliance actions undertaken pursuant to Section V of this Consent Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

    b.     <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 42 Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree

45.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.     INFORMATION COLLECTION AND RETENTION

46.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

    a.     monitor the progress of activities required under this Consent Decree;

    b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.     obtain documentary evidence, including photographs and similar data; and

    d.     assess Defendant's compliance with this Consent Decree.

47.     Until three (3) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or

its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

48.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

49.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

50.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XI.     EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

51.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

52.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing

14

regulations, or under other federal laws, regulations, or permit conditions. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

53.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 51.

54.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401, et seq., or with any other provisions of federal, State, or local laws, regulations, or permits.

55.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

56.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XII.   COSTS

57.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

15

XIII.   NOTICES

58.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:        eescdcopy.enrd@usdoj.gov
                                         Re: DJ # 90-5-2-1-10408

As to the United States by mail:         EES Case Management Unit
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         P.O. Box 7611
                                         Washington, D.C.  20044-7611
                                         Re: DJ # 90-5-2-1-10408

As to EPA by email:                      ihlenburg.erick@epa.gov

As to EPA:                               Chief, Air Branch
                                         Office of Regional Counsel
                                         U.S. Environmental Protection Agency
                                         Region 2
                                         290 Broadway
                                         New York, NY 10007

                                         And

                                         Chief, Air Compliance Branch
                                         Division of Enforcement and Compliance
                                         Assistance
                                         U.S. Environmental Protection Agency
                                         Region 2
                                         290 Broadway
                                         New York, NY 10007

16

As to Defendant:                    Steven Krynski
                                    Refinery Manager
                                    Paulsboro Refining Company LLC
                                    800 Billingsport Road
                                    Paulsboro, NJ 08066
                                    Steve.Krynski@pbfenergy.com

                                    Arthur G. Warden III
                                    Deputy General Counsel
                                    PBF Energy
                                    1 Sylvan Way, Second Floor
                                    Parsippany, NJ 07054
                                    Art.Warden@pbfenergy.com

                                    Bart E. Cassidy
                                    Manko, Gold, Katcher, & Fox, LLP
                                    401 City Avenue, Suite 901
                                    Bala Cynwyd, PA 19004
                                    bcassidy@mankogold.com

59.   Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

60.   Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.   EFFECTIVE DATE

61.   The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.   RETENTION OF JURISDICTION

62.   The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.   MODIFICATION

63.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

64.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 44, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.   TERMINATION

65.     After Defendant has completed the requirements of Section V (Compliance Requirements), and has thereafter maintained satisfactory compliance with this Consent Decree for a period of 2 years after July 30, 2018, and has paid the civil penalty, interest, and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

66.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

67.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 20 Days after service of its Request for Termination.

## XVIII.   PUBLIC PARTICIPATION

68.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further

notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

69.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

70.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX.   INTEGRATION

71.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI.   FINAL JUDGMENT

72.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


_____
UNITED STATES DISTRICT JUDGE


19

FOR THE UNITED STATES OF AMERICA:


4/18/17
Date

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section


BRIAN G. DONOHUE
Senior Attorney
PATRICK BRYAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC  20044-7611


WILLIAM E. FITZPATRICK
Acting United States Attorney
District of New Jersey

ALLAN URGENT
Assistant United States Attorney
970 Broad Street, 7th Floor
Newark, NJ 07102

20

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

_____
ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region 2


Of Counsel:

ERICK R. IHLENBURG
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
Office of Regional Counsel

FOR PAULSBORO REFINING COMPANY LLC:


3/16/2017
Date

Steven Krynski
Refinery Manager
Paulsboro Refining Company LLC